# EXHIBIT "A"

IN THE CIRCUIT COURT FOR THE
19TH JUDICIAL CIRCUIT IN AND FOR
OKEECHOBEE COUNTY, FLORIDA

**CASE TRANSFERRED TO OSCEOLA COUNTY**

**RANDAL A. LOS**, individually, and
**CONNIE LOS**, individually,

CASE NO.: 2025-000088-CA-AXMX

Plaintiff,

vs.

**PILOT TRAVEL CENTERS, LLC**
a foreign limited liability company;
**DOUG HALLMARK**, individually;
**DENNIS LIVINGSTON**, individually;
**WESS GAUTHIER**, individually; and
**TIFFANY STREEPER**, individually,

Defendants.
_______________________________________/

**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiffs, RANDAL A. LOS, individually and CONNIE LOS, individually, by and through undersigned counsel, hereby sue Defendants PILOT TRAVEL CENTERS, LLC, (hereinafter, "PILOT"), a foreign for-profit limited liability company, DOUG HALLMARK, individually, DENNIS LIVINGSTON, individually, WESS GAUTHIER, individually, and TIFFANY STREEPER, individually, for damages, demands a trial by jury on all issues so triable, and further states as follows:

1. This is an action for damages that exceeds Fifty Thousand Dollars ($50,000.00) exclusive of interest, costs and attorney's fees.

2. At all times material to this action, Plaintiff, RANDAL A. LOS, was and is a resident of Florida, over the age of 18 years, and otherwise, *sui juris*.

3. At all times material to this action, Plaintiff, CONNIE LOS, was and is a resident of Florida, over the age of 18 years, and otherwise, *sui juris*.

4. At all times material to this action, PILOT, was and is a foreign limited liability company that operates truck stops under the brands of Pilot Travel Centers, Flying J Travel Plaza, ONE9 Fuel Network, and Mr. Fuel. Defendant PILOT has over 800 locations nationwide including several locations throughout the state of Florida, and was authorized to conduct, is authorized to and did conduct, business in Florida, and maintains a registered agent in Florida.

5. At all times material to this action, PILOT owned, had possession of, operated, and controlled the Pilot Travel Center located at 3051 State Road 60, Okeechobee, FL 34972 (hereinafter, "Subject Premises"), which is located in Osceola County.

6. At all times material to this action, Defendant DOUG HALLMARK was a resident of Florida, over the age of 18 years and otherwise, *sui juris*, worked for PILOT, and had requisite supervisory authority over the Subject Premises and authority over employees of the Subject Premises.

7. At all times material to this action, Defendant DENNIS LIVINGSTON was a resident of Florida, over the age of 18 years and otherwise, *sui juris*, worked for PILOT, and had requisite supervisory authority over the Subject Premises and authority over employees of the Subject Premises.

8. At all times material to this action, Defendant WESS GAUTHIER was a resident of Florida, over the age of 18 years and otherwise, *sui juris*, worked for PILOT, and had requisite supervisory authority over the Subject Premises and authority over employees of the Subject Premises.

9. At all times material to this action, Defendant TIFFANY STREEPER was a resident of Florida, over the age of 18 years and otherwise, *sui juris*, worked for PILOT, and had requisite supervisory authority over the Subject Premises and authority over employees of the Subject Premises.

10. Venue is proper in Osceola County Florida, because the Defendant does business there and/or all of the acts complained of herein occurred in Osceola County.

**FACTS COMMON TO ALL COUNTS**

11. On or about September 14, 2024, at approximately 8:00 p.m., RANDAL A. LOS and his spouse, CONNIE LOS, were both business invitees at the Pilot Travel Center located at 3051 State Road 60, Okeechobee, FL 34972, for the purpose of emptying the septic tanks of their recreational vehicle/camper (hereinafter "RV") at PILOT's septic tank Dumping Area (hereinafter, "Dumping Area").

12. On the above referenced date and time, while a business invitee, and as RANDAL A. LOS attempted to empty his RV's septic tank at the Dumping Area, RANDAL A. LOS slipped and fell on a slippery substance that existed on the ground.

13. The substance that RANDAL A. LOS slipped on was the result of an ongoing and recurring issue of excess water accumulation that mixed with dirt, mud and/or other organic matter. This created an unsafe, dangerous, slippery condition (hereinafter "Dangerous Condition") on the surface of the ground where RANDAL A. LOS walked.

14. All Defendants had actual or constructive knowledge of the Dangerous Condition because the Dangerous Condition occurred with regularity, either constantly or frequently, over many days or many weeks prior to RANDAL A. LOS's slip and fall. All Defendants were aware of the excess water accumulation issue and that the issue

frequently mixed with surrounding dirt, mud, and/or other organic matter. The Dangerous Condition was foreseeable to all Defendants.

15. In the days or several weeks prior to RANDAL A. LOS's slip and fall, PILOT, and/or DOUG HALLMARK, and/or DENNIS LIVINGSTON and/or WESS GAUTHIER, and/or TIFFANY STREEPER attempted to repair, ordered other employees, agents, and/or servants to repair, solicited others to repair, the recurring issue of excess water accumulation that existed in the Dumping Area and contributed to the Dangerous Condition.

16. Unfortunately, the Dangerous Condition was not resolved or repaired prior to RANDAL A. LOS's slip and fall. However, the Dangerous Condition persisted.

17. On the above-referenced date and time, the Dumping Area was improperly or inadequately illuminated such that the poor visibility created an unreasonable danger of slipping, falling, tripping, or other hazards.

18. The lighting that existed on the above-referenced date and time was insufficient in illumination, and/or too far in distance from the Dumping Area such that the lighting that did exist at the time insufficiently illuminated the Dumping Area, and/or the lighting was positioned in such a way that it did not sufficiently illuminate the Dumping Area while RANDAL A. LOS utilized the Dumping Area.

19. The poor illumination of the Dumping Area prevented RANDAL A. LOS from detecting the Dangerous Condition.

20. All Defendants knew or should have known that the area in question was improperly or inadequately illuminated based on the longstanding positioning of the lighting, and/or lack of adequate illumination.

21. At the time that RANDAL A. LOS slipped and fell on the Dangerous Condition, the Dumping Area was open to business invitees, but there were no warning signs, construction cones or any alerts whatsoever that the ground of the Dumping Area was a hazard or may be a hazard.

22. PILOT owed RANDAL A. LOS and CONNIE LOS a non-delegable duty under common law and Fla. Stat. § 768.0755 to exercise reasonable care in the maintenance of the Subject Premises, including the Dumping Area. PILOT owed RANDAL A. LOS and CONNIE LOS a non-delegable duty to:

a. Keep the Dumping Area free of unsafe, dangerous conditions;
b. Keep the Dumping Area properly and adequately maintained;
c. Keep the Dumping Area properly and adequately illuminated;
d. Keep the Dumping Area free of all dangers that could cause slips or falls;
e. Inspect for unsafe, dangerous conditions;
f. Proactively take appropriate, adequate, and reasonable measures to protect RANDAL A. LOS from all obvious dangers and reasonably anticipated dangers in and around the Dumping Area;
g. Warn of any and all unsafe, dangerous conditions that existed in and around the Dumping Area; and
h. Close off access to the Dumping Area until the Dangerous Condition was fully repaired/resolved.

23. DOUG HALLMARK, DENNIS LIVINGSTON, WESS GAUTHIER, AND TIFFANY STREEPER owed RANDAL A. LOS and CONNIE LOS a duty under common law and Fla. Stat. § 768.0755 to exercise reasonable care in the maintenance of the Subject Premises, including the Dumping Area. DOUG HALLMARK, DENNIS

LIVINGSTON, WESS GAUTHIER, AND TIFFANY STREEPER owed RANDAL A. LOS and CONNIE LOS a duty to:

a. Keep the Dumping Area free of unsafe, dangerous conditions;
b. Keep the Dumping Area properly and adequately maintained;
c. Keep the Dumping Area properly and adequately illuminated;
d. Keep the Dumping Area free of all dangers that could cause slips or falls;
e. Inspect for unsafe, dangerous conditions;
f. Ensure other employees inspect for unsafe, dangerous conditions;
g. Proactively take appropriate, adequate, and reasonable measures to protect RANDAL A. LOS from all obvious dangers and reasonably anticipated dangers in and around the Dumping Area;
h. Warn of any and all unsafe, dangerous conditions that existed in and around the Dumping Area;
i. Ensure that other employees warn of any and all dangerous conditions that existed in and around the Dumping Area; and
j. Close off access to the Dumping Area until the Dangerous Condition was fully repaired/resolved.

**COUNT I – PLAINTIFF'S CLAIM AGAINST PILOT FOR NEGLIGENCE**

Plaintiff, RANDAL A. LOS, re-alleges and re-adopts paragraphs 1 through 23 as if set forth fully herein and further states:

24. PILOT knew or should have known by the use of reasonable care, that on the above referenced date, the Dangerous Condition existed or was likely to exist at the Dumping Area.

25. The Dangerous Condition created an unreasonable and unsafe hazard that could have been avoided if PILOT, its agents, servants, or employees properly and adequately cleaned or otherwise maintained or repaired the Dumping Area.

26. The Dangerous Condition created an unreasonable and unsafe hazard that could have been avoided if PILOT, its agents, servants, or employees properly and adequately ensured that the Dumping Area was adequately illuminated.

27. The Dangerous Condition created an unreasonable and unsafe hazard that could have been avoided if PILOT, its agents, servants, or employees properly and adequately ensured that the Dumping Area closed off to business invitees until the Dangerous Condition was fully repaid/resolved.

28. The Dangerous Condition created an unreasonable and unsafe hazard that could have been avoided if PILOT, its agents, servants, or employees properly and adequately warned business invitees of the latent unreasonable and unsafe hazard that existed or was likely to exist based on prior knowledge of the hazard.

29. RANDAL A. LOS's injuries from his slip and fall at the Dumping Area were directly and proximately caused by the negligence of PILOT, and/or the negligence of PILOT's agents, servants, or employees.

30. PILOT, and/or the PILOT's agents, servants, or employees breached the duties owed to RANDAL A. LOS by failing to perform one or more of the following acts or omissions:

a. Failing to maintain Dumping Area in a reasonably safe condition;

b. Ignoring or otherwise failing to remediate or resolve the Dangerous Condition;

c. Failing to install or maintain adequate illumination of the Dumping Area so its business invitees could adequately see;

d. Failing to proactively increase the already insufficient illumination, despite having known or should have known that the Dumping Area was a danger due to the Dangerous Condition;

e. Failing to keep the area free of the Dangerous Condition that directly led to RANDAL A. LOS's slip and fall;

f. Failing to order its employees, agents, or servants to keep the area free of the Dangerous Condition that directly led to free of the Dangerous Condition that led to RANDAL A. LOS's slip and fall;

g. Failing to properly and adequately monitor the Dumping Area for the unsafe, dangerous, slippery condition despite having known or should have known of the presence of the Dangerous Condition;

h. Failing to order its employees, agents, or servants to properly and adequately monitor the Dumping Area for the unsafe, dangerous, slippery condition despite having known or should have known of the presence of the Dangerous Condition;

i. Failing to warn business invitees of any and all hazardous conditions in the Dumping Area, including the Dangerous Condition;

j. Failing to order its employees, agents, or servants to warn business invitees of any and all hazardous conditions in the Dumping Area, including the Dangerous Condition;

k. Failing to order that the Dumping Area remain closed until the Dumping Area is fully repaired and no longer a danger to business invitees; and/or

l. Failing to take adequate and appropriate remedial measures, thus PILOT created an unsafe, dangerous condition and/or allowed an unsafe, dangerous condition to persist on its property.

31. As a direct and proximate result of the negligence of PILOT and/or PILOT's agents, servants or employees, RANDAL A. LOS:

a. Suffered serious, painful, and permanent bodily injuries, great physical pain, aggravation of pre-existing injuries, mental anguish, severe and substantial emotional distress, and loss of the capacity for the enjoyment of life in the past, present and future;

b. Was, is, and will be required to undergo medical treatment and incur medical costs and expenses to alleviate past, present, and future injuries, pain, and suffering;

c. Was, is and will be precluded from engaging in normal activities and pursuits, including a past, present and future loss of ability to earn money and actual earnings; and

d. Otherwise, was hurt, injured, and caused to sustain losses.

32. Treatment for physical injuries and medical treatment are ongoing. There is currently no end in sight. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

33. The pain and suffering are ongoing and significant. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff, RANDAL A. LOS, demands judgment against Defendant, PILOT, for damages in excess of the minimal jurisdictional limits of this

Court, as well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

**COUNT II – PLAINTIFF'S CLAIM AGAINST DOUG HALLMARK FOR NEGLIGENCE**

Plaintiff, RANDAL A. LOS, re-alleges and re-adopts paragraphs 1 through 23 as if set forth fully herein and further states:

34. At all times material, DOUG HALLMARK was a Regional Manager for PILOT. DOUG HALLMARK managed, in part, the Subject Premises.

35. Employees of the Subject Premises informed DOUG HALLMARK of the Dangerous Condition caused by the excess water accumulation days or several weeks prior to RANDAL A. LOS's slip and fall at the Dumping Area.

36. As Regional Manager, DOUG HALLMARK had the duty to inquire and/or be informed of the existence of any and all hazards on the property, including the Dangerous Condition caused by the excess water accumulation that lasted for at least days or several weeks or more, prior to RANDAL A. LOS's slip and fall at the Dumping Area.

37. As Regional Manager, DOUG HALLMARK knew or should have known of the Dangerous Condition because DOUG HALLMARK managed, in part, the Subject Premises as Regional Manager on or about the time of RANDAL A. LOS's slip and fall, and for a sufficient length of time prior to the slip and fall, that as Regional Manager, DOUG HALLMARK was on constructive notice of the recurring hazard.

38. As Regional Manager at all times material, DOUG HALLMARK, on actual or constructive notice of the Dangerous Condition, had both the duty to and the authority to initiate and/or approve repairs or improvements made to the Subject Premises, including repairs to excess water accumulation that existed at the Dumping Area.

39. As Regional Manager, DOUG HALLMARK, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to initiate and/or approve the implementation of increased lighting or illumination in and around the Dumping Area to mitigate the unsafe, hazardous condition.

40. As Regional Manager, DOUG HALLMARK, on actual or constructive notice of the Dangerous Condition, had the authority to install warning signs in and around the Dumping Area, and/or order employees, servants, or agents under his control to install warning signs in and around the Dumping Area, to warn business invitees, including RANDAL A. LOS, of the Dangerous Condition.

41. As Regional Manager, DOUG HALLMARK, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to clean the Dumping Area and/or order employees, servants, or agents under his control to clean the Dumping Area to resolve the recurring Dangerous Condition.

42. As Regional Manager, DOUG HALLMARK, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to ensure inspection of the Dumping Area and/or increase the frequency of inspection the Dumping Area to discover any and all hazardous conditions, including the recurring Dangerous Condition.

43. As Regional Manager, DOUG HALLMARK, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to close the Dumping Area and/or order employees, servants, or agents under his control to close the Dumping Area until the Dangerous Condition was resolved/repaired.

44. DOUG HALLMARK breached the duty owed to RANDAL A. LOS by failing to perform one or more of the following acts or omissions that DOUG HALLMARK had the authority to perform:

a. Failing to maintain Dumping Area in a reasonably safe condition and/or failing to order employees, servants, or agents under his control to maintain the Dumping Area in a reasonably safe condition;

b. Failing to install or maintain adequate illumination and/or failure to order employees, servants, or agents under his control to install or maintain adequate illumination of the Dumping Area so its business invitees could adequately see;

c. Failing to proactively increase the already insufficient illumination in the Dumping Area and/or failing to order employees, servants, or agents under his control to increase the already insufficient illumination in the Dumping Area, despite having known or should have known that the Dumping Area was a danger to business invitees due to the Dangerous Condition;

d. Failing to keep the Dumping Area free of the Dangerous Condition and/or failing to order employees, servants, or agents under his control to keep the area free of the Dangerous Condition;

e. Failing to properly and adequately monitor the Dumping Area for any and all unsafe, dangerous, slippery conditions and/or failing to order employees, servants, or agents under his control to properly and adequately monitor the Dumping Area for any and all unsafe dangerous, slippery conditions, despite having known or should have known of the presence of the Dangerous Condition;

f. Failing to warn business invitees of the Dangerous Condition and/or failing to order employees, servants, or agents under his control to warn business invitees of the Dangerous Condition;

g. Failing to close the Dumping Area and/or order employees, servants, or agents under his control to close the Dumping Area until the Dangerous Condition at Dumping Area was fully repaired and no longer a danger to business invitees;

h. Ignoring or otherwise failing to remediate or resolve the Dangerous Condition and/or failing to order employees, servants, or agents under his control to remediate or resolve the Dangerous Condition; and/or

i. Failing to take adequate and appropriate remedial measures, thus DOUG HALLMARK allowed an unsafe, dangerous condition to persist on the Subject Premises.

45. RANDAL A. LOS's injuries were directly and proximately caused by the negligence of DOUG HALLMARK.

46. As a direct and proximate result of the negligence of DOUG HALLMARK, RANDAL A. LOS:

a. Suffered serious, painful, and permanent bodily injuries, great physical pain, aggravation of pre-existing injuries, mental anguish, severe and substantial emotional distress, and loss of the capacity for the enjoyment of life in the past, present and future;

b. Was, is, and will be required to undergo medical treatment and incur medical costs and expenses to alleviate past, present, and future injuries, pain, and suffering;

c. Was, is and will be precluded from engaging in normal activities and pursuits, including a past, present and future loss of ability to earn money and actual earnings; and

d. Otherwise, was hurt, injured, and caused to sustain losses.

47. Treatment for physical injuries and medical treatment are ongoing. There is currently no end in sight. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

48. The pain and suffering are ongoing and significant. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff, RANDAL A. LOS demands judgment against Defendant, DOUG HALLMARK, for damages in excess of the minimal jurisdictional limits of this Court, as well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

## COUNT III – PLAINTIFF'S CLAIM AGAINST DENNIS LIVINGSTON FOR NEGLIGENCE

Plaintiff, RANDAL A. LOS, re-alleges and re-adopts paragraphs 1 through 23 as if set forth fully herein and further states:

49. At all times material, DENNIS LIVINGSTON was a General Manager of the Subject Premises.

50. Employees of the Subject Premises informed DENNIS LIVINGSTON of the Dangerous Condition caused by the excess water accumulation days or several weeks prior to RANDAL A. LOS's slip and fall at the Dumping Area.

51. As General Manager, DENNIS LIVINGSTON had the duty to inquire and/or be informed of the existence of any and all hazards on the property, including the

Dangerous Condition caused by the excess water accumulation that lasted for at least days or several weeks or more, prior to RANDAL A. LOS's slip and fall at the Dumping Area.

52. As General Manager, DENNIS LIVINGSTON knew or should have known of the Dangerous Condition because DENNIS LIVINGSTON managed the Subject Premises as General Manager on or about the time of RANDAL A. LOS's slip and fall, and for a sufficient length of time prior to the slip and fall that, as General Manager, DENNIS LIVINGSTON was on constructive notice of the recurring hazard.

53. As General Manager at all times material, DENNIS LIVINGSTON, on actual or constructive notice of the Dangerous Condition, had both the duty to and the authority to initiate and/or approve repairs or improvements made to the Subject Premises, including repairs to excess water accumulation that existed at the Dumping Area.

54. As General Manager, DENNIS LIVINGSTON, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to initiate and/or approve the implementation of increased lighting or illumination in and around the Dumping Area.

55. As General Manager, DENNIS LIVINGSTON, on actual or constructive notice of the Dangerous Condition, had the authority to install warning signs in and around the Dumping Area, and/or order employees, servants, or agents under his control to install warning signs in and around the Dumping Area, to warn business invitees, including RANDAL A. LOS, of the Dangerous Condition.

56. As General Manager, DENNIS LIVINGSTON, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to clean the

Dumping Area and/or order employees, servants, or agents under his control to clean the Dumping Area to resolve the recurring Dangerous Condition.

57. As General Manager, DENNIS LIVINGSTON, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to inspect and/or order employees, servants, or agents under his control to inspect the Dumping Area and/or increase the frequency of his inspection of and/or order employees, servants, or agents under his control to increase the frequency of the inspection of the Dumping Area to discover any and all hazardous conditions, including the Dangerous Condition.

58. As General Manager, DENNIS LIVINGSTON, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to close the Dumping Area and/or order employees, servants, or agents under his control to close the Dumping Area until the Dangerous Condition was resolved/repaired.

59. DENNIS LIVINGSTON breached the duty owed to RANDAL A. LOS by one or more of the following acts or omissions of DENNIS LIVINGSTON:

a. Failing to maintain Dumping Area in a reasonably safe condition and/or failing to order employees, servants, or agents under his control to maintain the Dumping Area in a reasonably safe condition;

b. Failing to install or maintain adequate illumination and/or failure to order employees, servants, or agents under his control to install or maintain adequate illumination of the Dumping Area so its business invitees could adequately see;

c. Failing to proactively increase the already insufficient illumination in the Dumping Area and/or failing to order employees, servants, or agents under his control to increase the already insufficient illumination in the

Dumping Area, despite having known or should have known that the Dumping Area was a danger to business invitees due to the Dangerous Condition;

d. Failing to keep the Dumping Area free of the Dangerous Condition and/or failing to order employees, servants, or agents under his control to keep the area free of the Dangerous Condition;

e. Failing to properly and adequately monitor the Dumping Area for any and all unsafe, dangerous, slippery conditions and/or failing to order employees, servants, or agents under his control to properly and adequately monitor the Dumping Area for any and all unsafe dangerous, slippery conditions, despite having known or should have known of the presence of the Dangerous Condition;

f. Failing to warn business invitees of the Dangerous Condition and/or failing to order employees, servants, or agents under his control to warn business invitees of the Dangerous Condition;

g. Failing to close the Dumping Area and/or order employees, servants, or agents under his control to close the Dumping Area until the Dangerous Condition at Dumping Area was fully repaired and no longer a danger to business invitees;

h. Ignoring or otherwise failing to remediate or resolve the Dangerous Condition and/or failing to order employees, servants, or agents under his control to remediate or resolve the Dangerous Condition; and/or

i. Failing to take adequate and appropriate remedial measures, thus DENNIS LIVINGSTON allowed an unsafe, dangerous condition to persist on the Subject Premises

60. RANDAL A. LOS's injuries were directly and proximately caused by the negligence of DENNIS LIVINGSTON.

61. As a direct and proximate result of the negligence of DENNIS LIVINGSTON, RANDAL A. LOS:

a. Suffered serious, painful, and permanent bodily injuries, great physical pain, aggravation of pre-existing injuries, mental anguish, severe and substantial emotional distress, and loss of the capacity for the enjoyment of life in the past, present and future;

b. Was, is, and will be required to undergo medical treatment and incur medical costs and expenses to alleviate past, present, and future injuries, pain, and suffering;

c. Was, is and will be precluded from engaging in normal activities and pursuits, including a past, present and future loss of ability to earn money and actual earnings; and

d. Otherwise, was hurt, injured, and caused to sustain losses.

62. Treatment for physical injuries and medical treatment are ongoing. There is currently no end in sight. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

63. The pain and suffering are ongoing and significant. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff, RANDAL A. LOS demands judgment against Defendant, DENNIS LIVINGSTON, for damages in excess of the minimal jurisdictional limits of this Court, as well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

**COUNT IV – PLAINTIFF'S CLAIM AGAINST WESS GAUTHIER FOR NEGLIGENCE**

Plaintiff, RANDAL A. LOS, re-alleges and re-adopts paragraphs 1 through 23 as if set forth fully herein and further states:

64. At all times material, WESS GAUTHIER was a Store Manager of the Subject Premises.

65. Employees of the Subject Premises informed WESS GAUTHIER of the Dangerous Condition caused by the excess water accumulation days or several weeks prior to RANDAL A. LOS's slip and fall at the Dumping Area.

66. As Store Manager, WESS GAUTHIER had the duty to inquire and/or proactively be informed of the existence of any and all hazards on the property, including the Dangerous Condition caused by the excess water accumulation that lasted for at least days or several weeks or more, prior to RANDAL A. LOS's slip and fall at the Dumping Area.

67. As Store Manager, WESS GAUTHIER knew or should have known of the Dangerous Condition because WESS GAUTHIER worked at the Subject Premises as Store Manager on or about the time of RANDAL A. LOS's slip and fall, and for a sufficient length of time prior to the slip and fall that as Store Manager, WESS GAUTHER was on constructive notice of the recurring hazard.

68. As Store Manager at all times material, WESS GAUTHIER, on actual or constructive notice of the Dangerous Condition, had both the duty to and the authority to

initiate and/or approve repairs or improvements made to the Subject Premises, including repairs to excess water accumulation that existed at the Dumping Area.

69. As Store Manager, WESS GAUTHIER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to initiate and/or approve the implementation of increased lighting or illumination in and around the Dumping Area.

70. As Store Manager, WESS GAUTHIER, on actual or constructive notice of the Dangerous Condition, had the authority to install warning signs in and around the Dumping Area, and/or order employees, servants, or agents under his control to install warning signs in and around the Dumping Area, to warn business invitees, including RANDAL A. LOS, of the Dangerous Condition.

71. As Store Manager, WESS GAUTHIER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to clean the Dumping Area and/or order employees, servants, or agents under his control to clean the Dumping Area to resolve the recurring Dangerous Condition.

72. As Store Manager, WESS GAUTHIER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to inspect and/or order employees, servants, or agents under his control to inspect the Dumping Area and/or increase the frequency of his inspection of and/or order employees, servants, or agents under his control to increase the frequency of the inspection of the Dumping Area to discover any and all hazardous conditions, including the Dangerous Condition.

73. As Store Manager, WESS GAUTHIER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to close the Dumping Area and/or order employees, servants, or agents under his control to close the Dumping Area until the Dangerous Condition was resolved/repaired.

74. WESS GAUTHIER breached the duty owed to RANDAL A. LOS by one or more of the following acts or omissions of WESS GAUTHIER:

a. Failing to maintain Dumping Area in a reasonably safe condition and/or failing to order employees, servants, or agents under his control to maintain the Dumping Area in a reasonably safe condition;

b. Failing to install or maintain adequate illumination and/or failure to order employees, servants, or agents under his control to install or maintain adequate illumination of the Dumping Area so its business invitees could adequately see;

c. Failing to proactively increase the already insufficient illumination in the Dumping Area and/or failing to order employees, servants, or agents under his control to increase the already insufficient illumination in the Dumping Area, despite having known or should have known that the Dumping Area was a danger to business invitees due to the Dangerous Condition;

d. Failing to keep the Dumping Area free of the Dangerous Condition and/or failing to order employees, servants, or agents under his control to keep the area free of the Dangerous Condition;

e. Failing to properly and adequately monitor the Dumping Area for any and all unsafe, dangerous, slippery conditions and/or failing to order employees, servants, or agents under his control to properly and adequately monitor the Dumping Area for any and all unsafe dangerous, slippery conditions, despite having known or should have known of the presence of the Dangerous Condition;

f. Failing to warn business invitees of the Dangerous Condition and/or failing to order employees, servants, or agents under his control to warn business invitees of the Dangerous Condition;

g. Failing to close the Dumping Area and/or order employees, servants, or agents under his control to close the Dumping Area until the Dangerous Condition at Dumping Area was fully repaired and no longer a danger to business invitees;

h. Ignoring or otherwise failing to remediate or resolve the Dangerous Condition and/or failing to order employees, servants, or agents under his control to remediate or resolve the Dangerous Condition; and/or

i. Failing to take adequate and appropriate remedial measures, thus WESS GAUTHIER allowed an unsafe, dangerous condition to persist on the Subject Premises

75. RANDAL A. LOS's injuries were directly and proximately caused by the negligence of WESS GAUTHIER.

76. As a direct and proximate result of the negligence of WESS GAUTHIER, RANDAL A. LOS:

a. Suffered serious, painful, and permanent bodily injuries, great physical pain, aggravation of pre-existing injuries, mental anguish, severe and substantial emotional distress, and loss of the capacity for the enjoyment of life in the past, present and future;

b. Was, is, and will be required to undergo medical treatment and incur medical costs and expenses to alleviate past, present, and future injuries, pain, and suffering;

c. Was, is and will be precluded from engaging in normal activities and pursuits, including a past, present and future loss of ability to earn money and actual earnings; and

d. Otherwise, was hurt, injured, and caused to sustain losses.

77. Treatment for physical injuries and medical treatment are ongoing. There is currently no end in sight. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

78. The pain and suffering are ongoing and significant. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff, RANDAL A. LOS demands judgment against Defendant, WESS GAUTHIER, for damages in excess of the minimal jurisdictional limits of this Court, as well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

**COUNT V – PLAINTIFF's CLAIM AGAINST TIFFANY STREEPER FOR NEGLIGENCE**

Plaintiff, RANDAL A. LOS, re-alleges and re-adopts paragraphs 1 through 21 as if set forth fully herein and further states:

79. At all times material, TIFFANY STREEPER was an Assistant Store Manager or Store Manager of the Subject Premises.

80. Employees of the Subject Premises informed TIFFANY STREEPER of the Dangerous Condition caused by the excess water accumulation days or several weeks prior to RANDAL A. LOS's slip and fall at the Dumping Area.

81. As Assistant Store Manager or Store Manager, TIFFANY STREEPER had the duty to inquire and/or proactively be informed of the existence of any and all hazards

on the property, including the Dangerous Condition caused by the excess water accumulation that lasted for at least days or several weeks or more, prior to RANDAL A. LOS's slip and fall at the Dumping Area.

82. As Assistant Store Manager or Store Manager, TIFFANY STREEPER knew or should have known of the Dangerous Condition because TIFFANY STREEPER worked at the Subject Premises as Assistant Store Manager or Store Manager on or about the time of RANDAL A. LOS's slip and fall, and for a sufficient length of time prior to the slip and fall that as Assistant Store Manager or Store Manager, TIFFANY STREEPER was on constructive notice of the recurring hazard.

83. As Assistant Store Manager or Store Manager at all times material, TIFFANY STREEPER had both the duty to and the authority to initiate and/or approve repairs or improvements made to the Subject Premises, including repairs to excess water accumulation that existed at the Dumping Area.

84. As Assistant Store Manager or Store Manager, TIFFANY STREEPER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to initiate and/or approve the implementation of increased lighting or illumination in and around the Dumping Area.

85. As Assistant Store Manager or Store Manager, TIFFANY STREEPER, on actual or constructive notice of the Dangerous Condition, had the authority to install warning signs in and around the Dumping Area, and/or order employees, servants, or agents under her control to install warning signs in and around the Dumping Area, to warn business invitees, including RANDAL A. LOS, of the Dangerous Condition.

86. As Assistant Store Manager or Store Manager, TIFFANY STREEPER, on actual or constructive notice of the Dangerous Condition, had both the authority and the

duty to clean the Dumping Area and/or order employees, servants, or agents under her control to clean the Dumping Area to resolve the recurring Dangerous Condition.

87. As Assistant Store Manager or Store Manager, TIFFANY STREEPER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to inspect and/or order employees, servants, or agents under her control to inspect the Dumping Area and/or increase the frequency of his inspection of and/or order employees, servants, or agents under her control to increase the frequency of the inspection of the Dumping Area to discover any and all hazardous conditions, including the Dangerous Condition.

88. As Assistant Store Manager or Store Manager, TIFFANY STREEPER, on actual or constructive notice of the Dangerous Condition, had both the authority and the duty to close the Dumping Area and/or order employees, servants, or agents under her control to close the Dumping Area until the Dangerous Condition was resolved/repaired.

89. TIFFANY STREEPER breached the duty owed to RANDAL A. LOS by one or more of the following acts or omissions of TIFFANY STREEPER:

a. Failing to maintain Dumping Area in a reasonably safe condition and/or failing to order employees, servants, or agents under her control to maintain the Dumping Area in a reasonably safe condition;

b. Failing to install or maintain adequate illumination and/or failure to order employees, servants, or agents under her control to install or maintain adequate illumination of the Dumping Area so its business invitees could adequately see;

c. Failing to proactively increase the already insufficient illumination in the Dumping Area and/or failing to order employees, servants, or agents

under her control to increase the already insufficient illumination in the Dumping Area, despite having known or should have known that the Dumping Area was a danger to business invitees due to the Dangerous Condition;

d. Failing to keep the Dumping Area free of the Dangerous Condition and/or failing to order employees, servants, or agents under her control to keep the area free of the Dangerous Condition that directly led to RANDAL A. LOS's slip and fall;

e. Failing to properly and adequately monitor the Dumping Area for any and all unsafe, dangerous, slippery conditions and/or failing to order employees, servants, or agents under her control to properly and adequately monitor the Dumping Area for any and all unsafe dangerous, slippery conditions, despite having known or should have known of the presence of the Dangerous Condition;

f. Failing to warn business invitees of the Dangerous Condition and/or failing to order employees, servants, or agents under her control to warn business invitees of the Dangerous Condition;

g. Failing to close the Dumping Area and/or order employees, servants, or agents under her control to close the Dumping Area until the Dangerous Condition at Dumping Area was fully repaired and no longer a danger to business invitees;

h. Ignoring or otherwise failing to remediate or resolve the Dangerous Condition and/or failing to order employees, servants, or agents under her control to remediate or resolve the Dangerous Condition; and/or

i. Failing to take adequate and appropriate remedial measures, thus TIFFANY STREEPER allowed an unsafe, dangerous condition to persist on the Subject Premises

90. RANDAL A. LOS's injuries were directly and proximately caused by the negligence of TIFFANY STREEPER.

91. As a direct and proximate result of the negligence of TIFFANY STREEPER, RANDAL A. LOS:

a. Suffered serious, painful, and permanent bodily injuries, great physical pain, aggravation of pre-existing injuries, mental anguish, severe and substantial emotional distress, and loss of the capacity for the enjoyment of life in the past, present and future;

b. Was, is, and will be required to undergo medical treatment and incur medical costs and expenses to alleviate past, present, and future injuries, pain, and suffering;

c. Was, is and will be precluded from engaging in normal activities and pursuits, including a past, present and future loss of ability to earn money and actual earnings; and

d. Otherwise, was hurt, injured, and caused to sustain losses.

92. Treatment for physical injuries and medical treatment are ongoing. There is currently no end in sight. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

93. The pain and suffering are ongoing and significant. The losses are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff, RANDAL A. LOS demands judgment against Defendant,

TIFFANY STREEPER, for damages in excess of the minimal jurisdictional limits of this Court, as well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

## COUNT VI – PLAINTIFF'S CONSORTIUM CLAIM AGAINST ALL DEFENDANTS

Plaintiff CONNIE LOS re-alleges and re-adopts paragraphs 1 through 93 as if set forth fully herein and further states:

94. At all times material, Plaintiff, RANDAL A. LOS was and is the husband of CONNIE LOS.

95. As a direct and proximate result of the aforementioned negligence of PILOT and/or PILOT's agents, servants, or employees, DOUG HALLMARK, DENNIS LIVINGSTON, WESS GAUTHIER, and TIFFANY STREEPER, as stated in Counts I - V, Plaintiff RANDAL A. LOS sustained serious and permanent injuries and damages, as previously alleged.

96. As a direct and proximate result of the injuries suffered by RANDAL A. LOS, CONNIE LOS has suffered and continues to suffer a loss of her husband's consortium, love, affection, companionship, support, services, impairment of the marital relationship, and claims all available damages under Florida Law.

97. CONNIE LOS's losses are either permanent or continuing in nature and CONNIE LOS will suffer the losses in the future.

**WHEREFORE**, Plaintiff CONNIE LOS, demands judgment against Defendants, PILOT, DOUG HALLMARK, DENNIS LIVINGSTON, WESS GAUTHIER, and TIFFANY STREEPER, for damages in excess of the minimal jurisdictional limits of this Court, as

well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

**COUNT VII – CONNIE LOS's CLAIM AGAINST ALL DEFENDANTS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff CONNIE LOS, re-alleges and re-adopts paragraphs 1 through 93 as if set forth fully herein and further states:

98. At all times material, Plaintiff, RANDAL A. LOS was and is the husband of CONNIE LOS.

99. At all times material, CONNIE LOS was present when RANDAL A. LOS slipped and fell at the Dumping Area.

100. CONNIE LOS witnessed RANDAL A. LOS helpless and screaming in pain while lying on the ground in the area that he slipped and fell.

101. As a direct and proximate result of the negligence of PILOT and/or PILOT's agents, servants, or employees, DOUG HALLMARK, DENNIS LIVINGSTON, WESS GAUTHIER, and TIFFANY STREEPER, CONNIE LOS has suffered physical injury. CONNIE LOS's physical injuries were the direct result of the emotional distress that she suffered due to being present at the incident.

**WHEREFORE**, Plaintiff CONNIE LOS demands judgment against Defendants, PILOT, DOUG HALLMARK, DENNIS LIVINGSTON, WESS GAUTHIER, and TIFFANY STREEPER, for damages in excess of the minimal jurisdictional limits of this Court, as well as post-judgment interest as allowed by law, costs in bringing this action as allowed by law, and demands trial by jury of all issues so triable.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing was served via Electronic Mail to Andrew G. Tuttle, Esquire and Alexa G. Gibert, Esquire, Fowler White Burnett, P.A., 515 North Flagler Drive, Suite 2100, West Palm Beach, FL 33401 at atuttle@fowler-white.com; agebert@fowler-white.com; AEmanuel@fowler-white.com this 14th day of July, 2025.

Respectfully submitted,

By: */s/Thomas Scolaro*
THOMAS SCOLARO (FBN: 178276)
MATTHEW J. HIER (FBN: 0113686)
**SCOLARO LAW, P.A.**
1728 Coral Way, Suite 702
Miami, FL 33145
Tel: 305-424-2300 | Fax: 305-424-2140
Primary email: tom@usinjury.law
Primary email: matthew@usinjury.law
Secondary email: barbie@usinjury.law
*Counsel for Plaintiff*

AND

DANIEL P. FAHERTY (FBN 379697)
**TELFER, FAHERTY & ANDERSON, PLLC**
815 South Washington Avenue, Suite 201
Titusville, Florida 32780
Tel: 321.269.6833
Primary email: danfaherty@hotmail.com
Secondary email: cguntner@ctrfa.com
*Counsel for Plaintiff*